IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LaRELL FRANKLIN et al., | No. C-06-1909 MMC |
| Plaintiffs, | **ORDER GRANTING IN PART AND DENYING IN PART EFI AND ALBOFF'S MOTION TO DISMISS** |
| v. | |
| ALLSTATE CORPORATION et al., | (Docket No. 69) |
| Defendants. | |

Before the Court is the motion ("Motion") filed July 27, 2006 by defendants EFI Global, Inc. ("EFI") and George Alboff ("Alboff") to dismiss, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, the claims asserted against them in plaintiffs' Second Amended Complaint ("SAC"). Plaintiffs[1] have filed opposition to the motion. EFI and Alboff have filed a reply. Having considered the papers filed in support of and in opposition to the motion, the Court finds the matter appropriate for resolution without oral argument, see Civil L.R. 7-1(b), and rules as follows.

---

[1] Plaintiffs are "LaRell Franklin, individually and as executor and testamentary trustee of the Estate of Maggie Ivory, LaRon Franklin, Deborah Spade, Lisa Lemmons, Dorothy Sewell, as guardian of the estate of her wards, Amber Franklin, Deaneer Franklin and Coti Alexander." (See SAC ¶ 2.)

**BACKGROUND**

The instant action arises out of an insurance dispute over coverage for fire damage to residential property at 778 Lakeview Avenue in San Francisco ("Lakeview Property").

According to plaintiffs, a fire occurred on March 1, 2005 around 4:00 p.m. at the Lakeview Property. (See SAC ¶ 8.) Plaintiffs allege that Allstate Insurance Company ("Allstate") originally issued an insurance policy covering the Lakeview Property to decedent Maggie Ivory ("Ivory") in 1992. (See id. ¶ 4.) After Ivory's death, LaRell Franklin was appointed executor of the Ivory estate and the subject policy, Allstate Insurance Company Deluxe Plus Homeowners Policy No. 37300564 ("Policy"), was reissued to him on September 5, 2004 as personal representative of the Ivory estate. (See id. ¶ 4 and Ex. A.) On November 25, 2004, the Policy was amended to change the named insured to "LaRell Franklin, a single man." (See id. ¶ 5 and Ex. A.) After the fire, LaRell Franklin filed a claim for benefits under the Policy, and Allstate, in a letter dated March 10, 2006, denied the claim. (See id. ¶¶ 12, 16 and Ex. B.) In said letter, Allstate concluded that "the insured[ ] violated the 'Concealment or Fraud' provision of the policy by setting fire to the house; submitting a false claim and testifying falsely regarding the fire and the claim at [his] examinations under oath . . . [and] violated the 'What You Must Do After A Loss' and 'Suit Against Us' provisions of the policy." (See id. ¶ 16 and Ex. B at 1.)

With respect to EFI and Alboff, plaintiffs allege that on March 2, 2005, the day after the fire, Allstate retained EFI to investigate the origin and cause of the fire. (See id. ¶ 13.) Plaintiffs further allege that EFI conducted an investigation on March 3, 2005, and submitted a report, prepared by Alboff ("EFI/Alboff Report"), concluding the fire was incendiary or caused by arson. (See id.) In particular, according to plaintiffs, the EFI/Alboff Report states:

> The physical evidence strongly supports an incendiary fire. The fire originated in a location where common fires of accidental origin do not typically originate. A flammable liquid identified as mineral spirits were placed or poured on an interior staircase of this two-story, three-bedroom, two-bath single-family dwelling. The ignition source is unknown, however believed to be an ordinary open flame; possibly a candle. Once the flammable, heavier than air, vapors ignited the resulting fireball flashed over the entire staircase

area, spreading out into two directions. (See id.)  By contrast, plaintiffs allege, a San Francisco Fire Department ("SFFD") fire investigation report ("SFFD Report"), dated March 1, 2005, two days before EFI conducted its investigation, concluded that "the fire appeare[d] to be caused by an electrical failure," and that "[p]oor housekeeping contributed to the spread of th[e] fire to the upper sections of the dwelling."  (See id. ¶ 11 and Ex. C.)

According to plaintiffs, the "flammable liquid" referenced in the EFI/Alboff Report was later identified by Alboff as "paint thinner" contained in a plastic bucket that had been placed on the stairs.  (See id. ¶¶ 14,15 and Ex. B at 1.)  Plaintiffs deny that a plastic bucket having paint thinner was on the staircase on the date of fire, (see id. ¶ 14), and accuse EFI and Alboff of "planting a plastic bucket in the stair well March 3, 2005, to fabricate an arson charge against LaRell" and to "pave the way for Alboff/EFI's client Allstate to deny [the] fire loss."  (See id. ¶ 19.)

According to plaintiffs, flammable liquid cited in the EFI/Alboff Report was not noted by the SFFD arson investigators, and that the conclusion reached in the EFI/Alboff Report was "controverted by every witness that testified in the Allstate investigation."  (See id. ¶ 15.)  Plaintiffs further allege that Allstate's counsel, defendant Scott D. Schwartz ("Schwartz"), "agreed with Alboff/EFI to ascribe a false and pretextual origin and cause investigation into the fire."  (See id. ¶ 17.)  In that regard, Schwartz is alleged to have sought to "bolster" the EFI/Alboff Report by (1) obtaining a report, dated October 18, 2005, from Jeffrey Goode ("Goode"), an electrical engineer, in which Goode purported to conclude that the fire was not ignited by the electrical system, (see id. ¶ 27); and (2) arranging to have Alboff interview Lieutenant Mike Reynolds of the SFFD, who led the first engine company to respond to the fire, and that Alboff "purportedly got Reynolds to opine (in contradiction of the SFFD arson report) that 'the fire started at the bottom of the stairs.'"  (See id. ¶ 28.)

Plaintiffs claim that Schwartz intended to deny the subject claim on the basis of LaRell Franklin's criminal history and the EFI/Alboff Report.  (See id. ¶ 20.)  Plaintiffs are

3

1 African-American, (see id. ¶¶ 31, 38), and contend that Allstate's denial of their claim was
2 purposefully motivated by the "racial stigma attached to crack offenses by African
3 Americans," (see id. ¶ 18).

4     Plaintiffs assert causes of action against EFI and Alboff, for (1) conspiracy to violate
5 and violation of 42 U.S.C. § 1981 (First Claim); (2) conspiracy to violate and violation of
6 42 U.S.C. § 1982 (Second Claim); (3) conspiracy to violate and violation of 42 U.S.C.
7 § 3604 (Third Claim); (4) violation of 42 U.S.C. § 1985 (Fourth Claim); and (5) conspiracy to
8 interfere and interference with plaintiffs' prospective economic advantage and right to
9 inherit under California state law (Sixth Claim).

## LEGAL STANDARD

11     Dismissal under Rule 12(b)(6) can be based on the lack of a cognizable legal theory
12 or the absence of sufficient facts alleged under a cognizable legal theory. See Balistreri v.
13 Pacifica Police Dept., 901 F.2d 696, 699 (9th Cir. 1990). Rule 8(a)(2) of the Federal Rules
14 of Civil Procedure requires only "a short and plain statement of the claim showing that the
15 pleader is entitled to relief." See Fed. R. Civ. P. 8(a)(2). Consequently, "a complaint
16 attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations."
17 See Bell Atlantic Corp. v. Twombly, 127 S.Ct. 1955, 1964 (2007). Nonetheless, "a
18 plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than
19 labels and conclusions, and a formulaic recitation of the elements of a cause of action will
20 not do." See id. at 1965. "Factual allegations must be enough to raise a right to relief
21 above the speculative level[.]" Id.

22     Generally, a district court, in ruling on a Rule 12(b)(6) motion, may not consider any
23 material beyond the pleadings. See Hal Roach Studios, Inc. v. Richard Feiner And Co.,
24 Inc., 896 F.2d 1542, 1555 n. 19 (9th Cir. 1990). Material that is properly submitted as part
25 of the complaint, however, may be considered. See id. Documents whose contents are
26 alleged in the complaint, and whose authenticity no party questions, but which are not
27 physically attached to the pleading, also may be considered. See Branch v. Tunnell, 14
28 F.3d 449, 454 (9th Cir. 1994). In addition, the Court may consider any document "the

4

authenticity of which is not contested, and upon which the plaintiff's complaint necessarily relies," regardless of whether the document is referred to in the complaint. See Parrino v. FHP, Inc., 146 F.3d 699, 706 (9th Cir. 1998). Finally, the Court may consider matters that are subject to judicial notice. See Mack v. South Bay Beer Distributors, Inc., 798 F.2d 1279, 1282 (9th Cir. 1986).

In analyzing a motion to dismiss, the Court must accept as true all material allegations in the complaint, and construe them in the light most favorable to the nonmoving party. See NL Industries, Inc. v. Kaplan, 792 F.2d 896, 898 (9th Cir. 1986). The Court may disregard factual allegations if such allegations are contradicted by the facts established by reference to exhibits attached to the complaint. See Durning v. First Boston Corp., 815 F.2d 1265, 1267 (9th Cir. 1987). Conclusory allegations, unsupported by the facts alleged, need not be accepted as true. See Holden v. Hagopian, 978 F.2d 1115, 1121 (9th Cir. 1992). Courts "are not bound to accept as true a legal conclusion couched as a factual allegation." See Bell Atlantic Corp. v. Twombly, 127 S.Ct. at 1965 (internal quotation and citation omitted).

**DISCUSSION**

**A.  Section 47(c) Privilege**

EFI and Alboff's first argument in support of dismissal is that the EFI/Alboff Report is privileged, pursuant to Section 47(c) of the California Civil Code, and, consequently, cannot constitute the basis of any of plaintiffs' claims. Section 47(c) provides, in relevant part: "A privileged publication or broadcast is one made . . . [i]n a communication, without malice, to a person interested therein, (1) by one who is also interested, or (2) by one who stands in such a relation to the person interested as to afford a reasonable ground for supposing the motive for the communication to be innocent, or (3) who is requested by the person interested to give the information." See Cal. Civ. Code § 47(c).

**1. Federal Claims**

"[T]he federal courts will recognize state privileges only in cases in which state law supplies the rule of decision." Religious Technology Center v. Wollersheim, 971 F.2d 364,

1  367 n.10 (9th Cir. 1992).  EFI and Alboff argue, without citation to supporting authority, that
2  § 47(c) applies to the federal claims herein because "California law controls the true heart
3  of the dispute."  (See Reply at 8:12-14.)  In federal question cases, however, "the law of
4  privilege is governed by 'the principles of common law as they may be interpreted by the
5  courts of the United States in the light of reason and experience.'"  See id.  (quoting Fed. R.
6  Evid. 501) (declining to apply § 47(b) litigation privilege to federal claim under Copyright
7  Act).  EFI and Alboff cite no case in which § 47(c) has been held to bar a federal claim.
8  　　　Accordingly, EFI and Alboff have not demonstrated that plaintiffs' federal claims are
9  subject to dismissal by reason of privilege under § 47(c).

　　　　　　　**2.  State Law Claims**

11  　　　With respect to state law claims, the privilege under § 47(c), as noted, applies only
12  to statements made "without malice."  See Cal. Civ. Code § 47(c).  If "malice is shown, the
13  privilege is not merely overcome; it never arises in the first instance."  See Noel, 113 Cal.
14  App. 4th at 1368 (internal quotation and citation omitted).  "Malice," within the meaning of
15  § 47(c), is "established by a showing that the publication was motivated by hatred or ill will
16  towards the plaintiff or by a showing that the defendant lacked reasonable grounds for
17  belief in the truth of the publication and therefore acted in reckless disregard of the
18  plaintiff's rights."  See Noel v. River Hills Wilsons, Inc., 113 Cal. App. 4th 1363, 1370 (2003)
19  (quoting Sanborn v. Chronicle Pub. Co., 18 Cal. 3d 406, 413 (1976)) (internal quotation and
20  citation omitted) (emphasis in original).  "In demonstrating reckless disregard, it is not
21  sufficient that the statements are shown to be inaccurate, or even unreasonable"; rather,
22  "[o]nly willful falsity or recklessness will suffice."  See Glenn K. Jackson Inc. v. Roe, 273
23  F.3d 1192, 1202 (9th Cir. 2001) (internal quotation and citation omitted).
24  　　　In the instant action, plaintiffs allege that EFI and Alboff "plant[ed] a plastic bucket in
25  the stair well March 3, 2005, to fabricate an arson charge . . . and pave the way for
26  Alboff/EFI's client Allstate to deny [the] fire loss."  (See SAC ¶ 19.)  Plaintiffs have
27  adequately alleged facts from which an inference of malice may be drawn.
28  　　　Accordingly, EFI and Alboff have not demonstrated that plaintiffs' state law claims

are subject to dismissal by reason of privilege under § 47(c).

**B. § 1981 claim**

Plaintiffs' first claim alleges a conspiracy to violate and violation of 42 U.S.C. § 1981. Section 1981, in relevant part, guarantees "[a]ll persons . . . the same right in every State and Territory to make and enforce contracts . . ." See 42 U.S.C. § 1981(a). The phrase "make and enforce contracts" includes "the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship." See 42 U.S.C. § 1981(b).

At the outset, EFI and Alboff argue that the § 1981 claim against them should be dismissed because "nowhere in the claim . . . do plaintiffs even mention EFI or Alboff." (See Motion at 4:28-5:1.) The first claim, however, expressly incorporates allegations in the preceding paragraphs, including the allegations that "Allstate and its agent conspirators including . . . Alboff agreed to discriminate against Plaintiffs on the basis of race to deny the fire loss claim for false and pretextual reasons," (see SAC ¶ 13), and that "Alboff/EFI plant[ed] a plastic bucket in the stair well March 3, 2005, to fabricate an arson charge," (see id. ¶ 19). Additionally, the first claim itself alleges that "[a]ll defendants, including Alboff/EFI, . . . deprived Plaintiffs of their constitutionally protected property interest in inheriting Lakeview, home ownership, and the right to occupy Lakeview as a residence." (See id. ¶ 36.)

EFI and Alboff further argue that plaintiffs fail to allege the existence of a contract between plaintiffs and EFI and/or Alboff. EFI and Alboff cite no authority, however, for the proposition that persons other than parties to a contract cannot be held liable under § 1981, and, indeed, the authority is to the contrary. See, e.g., Imagineering, Inc. v. Kiewit Pacific Co., 976 F.2d 1303, 1313 (9th Cir. 1992) ("[C]ourts have not imposed a privity of contract type requirement that would otherwise protect third parties from section 1981 liability.").

Accordingly, EFI and Alboff are not entitled to dismissal of plaintiffs' § 1981 claim.

**C. § 1982 claim**

Plaintiffs' second claim alleges a conspiracy to violate and violation of 42 U.S.C. § 1982. Section 1982 provides that "[a]ll citizens of the United States shall have the same

7

right, in every State and Territory, as is enjoyed by white citizens thereof to inherit, purchase, lease, sell, hold, and convey real and personal property." See 42 U.S.C. § 1982.

EFI and Alboff move to dismiss the § 1982 claim on the grounds they "had nothing to do with plaintiffs' inheritance, purchase, lease, sale, holding or conveyance of the subject property," (see Motion at 6:3-5), that plaintiffs "do not connect the EFI/Alboff investigation and resulting report to the replacement housing issue," (see id. at 5:28 - 6:2), and that plaintiffs have not demonstrated that EFI and Alboff were aware of their race.

Section 1982 addresses "the right of black persons to hold and acquire property on an equal basis with white persons and the right of blacks not to have property interests impaired because of their race." See City of Memphis v. Greene, 451 U.S. 100, 122 (1981). Those property interests, as expressly set forth in § 1982, include personal property as well as real property. See 42 U.S.C. § 1982. In Greene, the Supreme Court itemized the various types of property interests that have been held to be protected by § 1982; in doing so the Supreme Court specifically noted that insurance contracts had been held to constitute property for purposes of § 1982, citing in that regard Sims v. Order of Commercial Travelers of America, 343 F. Supp. 112 (D. Mass. 1972). See Greene, 451 U.S. at 122 n.35. In Sims, the district court denied a motion to dismiss a § 1982 claim based on alleged racial discrimination in the sale of insurance. See Sims, 343 F. Supp. at 115 (holding insurer's "promise to pay is 'property' of substantial value to the purchaser . . . within the meaning of § 1982"). Consequently, in order to state a claim under § 1982, plaintiffs need not allege that EFI and Alboff were involved in plaintiffs' inheritance, purchase, lease, sale, holding or conveyance of the Lakeview Property, or of any replacement housing; rather, plaintiffs need only allege that EFI and Alboff impaired some real or personal property interest owned by plaintiffs. See Greene, 451 U.S. at 122.

Here, plaintiffs base their § 1982 claim on defendants' interference with their interest in the Policy, i.e., Allstate's promise to pay benefits. (See SAC ¶¶ 38, 39.) That promise to pay is "property . . . within the meaning of § 1982." See Sims, 343 F. Supp. at 115. As noted, plaintiffs allege that EFI and Alboff participated in the impairment of said property

8

interest by planting flammable liquid on the Lakeview Property and then drafting a false report to the effect that plaintiffs deliberately set the fire with such flammable liquid. (See id. ¶¶ 13, 16, 19.)[2] To the extent EFI and Alboff contend plaintiffs have failed to adequately plead racial motivation for such interference, defendants' argument likewise fails. Plaintiffs, as noted, have expressly alleged that race was the motivating factor behind EFI and Alboff's actions; EFI and Alboff cite no case requiring plaintiffs to plead with particularity the facts supporting such allegation.[3]

Accordingly, EFI and Alboff are not entitled to dismissal of plaintiffs' § 1982 claim.

**D.  § 3604 claim**

Plaintiffs' third claim alleges a conspiracy to violate and violation of 42 U.S.C. § 3604. Section 3604 is part of the Fair Housing Act ("FHA"), and provides, in relevant part, that it is unlawful "[t]o discriminate against any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection therewith, because of race, color, religion, sex, familial status, or national origin." See 42 U.S.C. § 3604(b). Plaintiffs assert that the racially discriminatory denial of a homeowner's insurance claim violates the FHA because insurance proceeds permit the homeowner to rebuild and sell a home previously damaged. (See SAC ¶ 44.) According to plaintiffs, such denial of a homeowner's insurance claim restricts the "terms, conditions, or privileges of sale or rental of a dwelling" in violation of § 3604(b). (See id.) EFI and Alboff move to dismiss plaintiffs' § 3604 claim on the grounds that EFI and Alboff are not mentioned in the claim and are neither an insurer nor a financing institution, and that plaintiffs thus have failed to sufficiently "connect" EFI and Alboff to plaintiffs' § 3604 claim.

---

[2] EFI and Alboff do not discuss whether such interference with plaintiffs' property interest constitutes interference with plaintiffs' ability to "inherit, purchase, lease, sell, hold, [or] convey," see 42 U.S.C. § 1982, that interest, and consequently, the Court does not address the issue herein.

[3] The authority on which EFI and Alboff rely, West Coast Theater Corp. v. City of Portland, 897 F.2d 1519 (9th Cir. 1990), is distinguishable. In that case, the issue was not the sufficiency of the plaintiff's pleadings, but rather whether Rule 11 sanctions should be imposed based on plaintiff's lack of evidence to support those pleadings.

9

(See Motion 6:20-7:2.)

EFI and Alboff fail to address plaintiffs' allegation that the assertedly discriminatory denial of their insurance claim interfered with plaintiffs' ability to repair and sell the Lakeview Property, and that EFI and Alboff participated in such denial by planting flammable liquid on the Lakeview Property and then submitting a report to Allstate ascribing a false cause and origin to the fire. (See SAC ¶¶ 13, 16, 19.) As plaintiffs note in their complaint, the regulations promulgated by the Department of Housing and Urban Development ("HUD") pursuant to the FHA make it unlawful to refuse to provide "property or hazard insurance for dwellings or [to] provid[e] such services or insurance differently because of race . . ." (See id. ¶ 43); see also 24 C.F.R. §§ 100.70(b), 100.70(d)(4); Nationwide Mut. Ins. Co. v. Cisneros, 52 F.3d 1351, 1360 (6th Cir. 1995) (holding HUD regulation precluding racially discriminatory practices in provision of property and hazard insurance to be "consistent with the goals of the [FHA] and a reasonable interpretation of the statute").

Accordingly, EFI and Alboff are not entitled to dismissal of plaintiffs' § 3604 claim.

**E. § 1985 claim**

Plaintiffs' fourth claim against EFI and Alboff alleges a violation of 42 U.S.C. § 1985. Section 1985(3) provides, in relevant part: "If two or more persons in any State or Territory conspire . . . for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, . . . [and] one or more persons engaged therein do, or cause to be done, any act in furtherance of such conspiracy, whereby another is injured in his person or property, . . . the party so injured or deprived may have an action for the recovery of damages occasioned by such injury or deprivation, against any one or more of the conspirators." See 42 U.S.C. § 1985(3). EFI and Alboff move to dismiss the § 1985 claim on the grounds that plaintiffs' allegations of conspiracy are conclusory and insufficient to support a § 1985 claim, and that "an agent of an insurance company is generally immune from suits brought by claimants for actions taken while the agent was acting within the scope of his agency." (See Motion 7:7-21, 8:1-14.)

1    The Ninth Circuit has held that a plaintiff asserting a claim under § 1985 "must allege
2 facts to support the allegation that [the] defendants conspired together"; a "mere allegation
3 of conspiracy without factual specificity is insufficient." See Karim-Panahi v. Los Angeles
4 Police Department, 839 F.2d 621, 626 (9th Cir. 1988) (affirming dismissal of § 1985 claim
5 where complaint "contain[ed] legal conclusions but no specification of any facts to support
6 the claim of conspiracy").  There is no requirement, however, that a plaintiff allege specific
7 facts with respect to how the alleged conspiracy was formed; it is sufficient to allege facts
8 from which the existence of a conspiracy may be inferred.  See, e.g., Griffin v.
9 Breckenridge, 403 U.S. 88, 90-91, 103 (1971) (holding § 1985(3) claim sufficiently pleaded
10 where African-American plaintiffs therein alleged they were stopped and assaulted by
11 defendants and that such assault was result of conspiracy to prevent "plaintiffs and other
12 Negro-Americans, through such force, violence and intimidation, from seeking the equal
13 protection of the laws"); see also Johnson v. State of California, 207 F.3d 650, 655 (9th Cir.
14 2000) (reversing dismissal of § 1985(3) claim where plaintiff alleged policy of racial
15 segregation of prisoners; noting complaint "contains more than a bare allegation of
16 conspiracy, and additional facts in support of the alleged conspiracy may develop as
17 [plaintiff] proceeds with discovery"); Scott v. Ross, 140 F.3d 1275, 1284 (9th Cir. 1998)
18 (noting conspiracy under § 1985(3) "can be inferred from conduct and need not be proven
19 by evidence of an express agreement"); Fobbs v. Holy Cross Health System Corp., 29 F.3d
20 1439, 1448-50 (9th Cir. 1994), overruled on other grounds by Daviton v. Columbia/HCA
21 Healthcare Corp., 241 F.3d 1131 (9th Cir. 2001) (reversing dismissal of § 1985(3) claim;
22 finding allegation of racially motivated conspiracy plus allegation of "allegedly
23 discriminatorily motivated overt acts give defendants fair notice as to the specific acts which
24 [plaintiff] contends demonstrate a conspiracy to interfere with his right and privilege to
25 practice medicine based on his race and the race of his patients").
26    Here, plaintiffs expressly allege that all of the defendants, including EFI and Alboff,
27 conspired "to discriminate against Plaintiffs on the basis of race to deny the fire loss claim
28 for pretextual and false reasons," (see SAC ¶ 16), and, as overt acts in furtherance of the

11

conspiracy, allege that EFI and Alboff were hired by Allstate to investigate the fire, that EFI and Alboff planted flammable liquid on the Lakeview Property, that EFI and Alboff falsely reported that plaintiffs intentionally set the fire with said flammable liquid, and that Allstate's counsel, Schwartz, agreed with EFI and Alboff "to ascribe a false and pretextual origin and cause investigation into the fire." (See id. ¶¶ 13, 16, 17, 19.) These allegations suffice to state a claim against EFI and Alboff for violation of § 1985(3).

EFI and Alboff's next argument, based on the "agent's immunity rule," (see Motion at 8:6-13), likewise fails. The cases on which EFI and Alboff rely concern professional negligence claims against insurance agents, not intentional tort claims against an independent contractor. See Lippert v. Bailey, 241 Cal. App. 2d 376, 378 (1966); Good v. Prudential Ins. Co. of America, 5 F. Supp. 2d 804, 807 (1998); Gasnik v. State Farm Ins. Co., 825 F. Supp. 245, 249 (E.D. Cal. 1992). EFI and Alboff's reliance on the "intra-corporate conspiracy doctrine" similarly is misplaced. (See Motion 7:22-8:14.) Under that doctrine "a corporation or enterprise cannot conspire with its agents acting within the scope of their employment." See Washington v. Duty Free Shoppers, 696 F. Supp. 1323, 1325 (N.D. Cal. 1988) (collecting cases). The Ninth Circuit has expressly declined to resolve the question of whether the intra-corporate conspiracy doctrine applies to conspiracy claims brought under § 1985, see Portman v. County of Santa Clara, 995 F.2d 898, 910 (9th Cir. 1993), and other circuits are split on the issue, see id. (comparing cases). For purposes of the instant motion, however, the Court need not determine the applicability of the intra-corporate conspiracy doctrine to § 1985 claims. As denoted by its name, the doctrine is applicable to "intra-corporate" conspiracies, i.e., conspiracies between a corporation and its officers and employees, not to conspiracies, such as that alleged here, between two independent corporations. See, e.g., Davis & Cox v. Summa Corp., 751 F.2d 1507, 1526 (9th Cir. 1985); Washington, 696 F. Supp. at 1324.

1    Accordingly, EFI and Alboff are not entitled to dismissal of plaintiffs' § 1985 claim.[4]

**F. Interference with Prospective Economic Advantage and Inheritance**

Plaintiffs' fifth and final claim against EFI and Alboff alleges a conspiracy to interfere and interference with plaintiffs' prospective economic advantage and right to inherit. Under California law, the elements of the tort of intentional interference with prospective economic advantage are: (1) an economic relationship between the plaintiff and some third party, with the probability of future economic benefit to the plaintiff; (2) the defendant's knowledge of the relationship; (3) intentional acts on the part of the defendant designed to disrupt the relationship; (4) actual disruption of the relationship; and (5) economic harm to the plaintiff proximately caused by the acts of the defendant. See Korea Supply Co. v. Lockheed Martin Corp., 29 Cal. 4th 1134, 1153 (2003) (citing Buckaloo v. Johnson, 14 Cal. 3d 815, 827 (1975)). Additionally, a plaintiff seeking to recover damages for interference with prospective economic advantage must plead and prove as part of its case-in-chief that the defendant's conduct was wrongful by some legal measure other than the fact of the interference itself. See Della Penna v. Toyota Motor Sales, U.S.A., Inc., 11 Cal. 4th 376, 393 (1995).

EFI and Alboff argue there is no "third party" here because plaintiffs allege the existence of an economic relationship "between Plaintiffs and all Defendants, with the probability of future economic benefit to Plaintiffs." (See Motion at 8-9 (citing SAC ¶ 48).) Irrespective of such conclusory allegation, however, plaintiffs have pleaded facts supporting a claim for intentional interference. In particular, plaintiffs allege a contractual relationship

---

[4] In so ruling, the Court ordinarily would not reach EFI and Alboff's additional argument that § 1985(3) claims are confined to questions of involuntary servitude and interstate travel, as such argument was raised for the first time in EFI and Alboff's reply. See, e.g., Lentini v. California Center for the Arts, Escondido, 370 F.3d 837, 843 n.6 (9th Cir. 2004) (refusing to consider argument raised for the first time in reply because opposing party had no opportunity to respond). Because such argument also was raised by defendants Rust, Armenis & Schwartz and Scott D. Schwartz in their motion to dismiss, however, and for the reasons set forth in the Court's Order Granting in Part and Denying in Part Defendants Rust, Armenis & Schwartz and Scott D. Schwartz's Motion to Dismiss ("Schwartz Order"), filed concurrently herewith, the Court finds such argument unpersuasive. (See Schwartz Order at 9.)

1  between LaRell Franklin and Allstate; plaintiffs have alleged no similar relationship with EFI
2  and/or Alboff.  For the reasons set forth in the Schwartz Order, however, to the extent
3  plaintiffs seek to bring such claim on behalf of any plaintiff other than LaRell Franklin, the
4  claim is subject to dismissal.  (See Schwartz Order at 10.)

5  Defendants next argue that to the extent plaintiffs' claim of interference with a
6  prospective economic advantage is based on interference with a contractual relationship,
7  the claim is "mislabeled," (see Motion at 9:9), noting the two causes of action are distinct.
8  The Court agrees that the two claims are distinguishable, see Della Penna, 11 Cal. 4th at
9  392, but declines to dismiss on such ground; as noted, plaintiffs have adequately pleaded a
10 claim for interference with a contractual relationship.

11 To the extent plaintiffs allege that EFI and Alboff interfered with plaintiffs' inheritance,
12 however, plaintiffs have cited no case that recognizes tortious interference with inheritance
13 as a cause of action in California, and the Court has located none.  In any event, the
14 authority on which plaintiffs rely is distinguishable.  Those cases concern interference with
15 the relationship between a testator and a prospective beneficiary, not the relationship
16 between a beneficiary and a third party.  See Marshall v. Marshall, 126 S. Ct. 1735, 1749
17 (2006) (noting "Texas courts have recognized a state-law tort action for interference with an
18 expected inheritance or gift . . . ."); Allen v. Hall, 139 F.3d 716 (9th Cir. 1998) (certifying to
19 Oregon Supreme Court issue of whether state of Oregon recognizes cause of action for
20 tortious interference, where complaint alleged defendant prevented testator from changing
21 will to provide for plaintiffs).

22 Accordingly, EFI and Alboff are not entitled to dismissal of plaintiffs' sixth claim to the
23 extent it pleads interference with a contractual relationship on behalf of LaRell Franklin; EFI
24 and Alboff are entitled to dismissal, as to all plaintiffs, to the extent such claim is based on
25 interference with an inheritance.

## CONCLUSION

27 For the reasons set forth above, EFI and Alboff's motion to dismiss is hereby
28 GRANTED with respect to plaintiffs' claim for conspiracy to interfere and interference with

plaintiffs' prospective economic advantage to the extent such claim is brought on behalf of any plaintiff other than LaRell Franklin and GRANTED with respect to plaintiffs' claim for conspiracy to interfere and interference with their right to inherit; in all other respects, the motion is hereby DENIED.

This order terminates Docket No. 69.

**IT IS SO ORDERED.**

Dated: July 3, 2007

_____
MAXINE M. CHESNEY
United States District Judge